UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| *Plaintiff*, | ) ) ) | |
| v. | ) ) | CAUSE NO. 1:19-cr-0229-RLY-DML |
| MOYAD DANNON, | ) ) | -02 |
| *Defendant*. | ) ) | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION FOR REVIEW OF DETENTION ORDER**

COMES NOW the United States of America, by and through the United States Attorney for the Southern District of Indiana and the undersigned Assistant United States Attorney, and files this Response in Opposition to Defendant Moyad Dannon's Motion for Review of the Detention Order in his case.

**I.      Background**

On May 15, 2019, brothers Mahde and Moyad Dannon were arrested on a six (6) count Criminal Complaint charging them, *inter alia*, with various firearms offenses, including manufacturing fully-automatic weapons in violation of Title 26, United States Code, § 5861. (Dkt. 2).  The Dannon brothers made their initial appearance before a United States Magistrate Judge on May 16, 2019, whereupon they were remanded to the custody of the United States Marshal pending probable cause and detention hearings scheduled for May 23, 2019.  At the conclusion of the hearings on May 23, 2019, the Magistrate Judge found probable cause to believe the Dannon brothers had committed the crimes outlined in the Criminal Complaint, and further concluded that there were no conditions or combination of conditions that the Court could impose which would reasonably assure the safety of the community and the presence of the defendants at

1

future proceedings.  Accordingly, the Magistrate Judge ordered both Mahde and Moyad Dannon detained pending trial,[1] and an order of detention as to each defendant was docketed on June 7, 2019. (Dkt. 19, 20)

With respect to Moyad Dannon, the Magistrate Judge's order of detention specifically noted that the weight of the evidence against the defendant was strong, the defendant faces a lengthy period of incarceration if convicted, the defendant lacks any stable employment, and the defendant has significant family ties in a foreign country, namely Jordan.  (Dkt. 20 at 3)  On the issue of danger, the Magistrate Judge noted "the defendant's sympathetic views toward violent extremism."  *Id*.  On the record at the detention hearing, the Magistrate Judge specifically highlighted her serious concern about the defendants returning to live at their father's residence while awaiting trial, as they had been residing at that residence while committing the crimes alleged in the Criminal Complaint.[2]

On July 2, 2019, Mahde and Moyad Dannon were charged in an eight (8) count Indictment alleging numerous violations of federal firearms law, including Title 18, United States Code, Sections 922(a), 922(d), 922(j), 922(n), and Title 26, United States Code, Section 5861(f). Significantly, however, the grand jury also charged the Dannon brothers with attempting to provide

---

[1] At the detention hearing, the government argued that a rebuttable presumption of detention applied in this case, pursuant to 18 U.S.C. § 3142(e)(3)(c), as the facts in the Criminal Complaint affidavit supported a finding of probable cause that Mahde and Moyad Dannon had committed an offense listed in 18 U.S.C. § 2332b(g)(5)(B), for which a maximum term of imprisonment of ten (10) years or more is prescribed.  Specifically, the government argued that probable cause existed to find that the Dannon brothers had also violated 18 U.S.C. § 2339B, which carries a maximum penalty of twenty (20) years.  The Magistrate Judge did not apply such presumption, however, finding that the government had not established a predicate for it under 18 U.S.C. § 3142(e)(3)(C). (Dkt. 20 at 3)

[2] The Criminal Complaint outlines multiple telephone conversations between the Dannon brothers' father, Mohdkear Dannon, and Mahde concerning erasing the contents of Mahde's phone that was seized and for which a search warrant was issued in connection with Mahde's felony theft case out of Lake County, Indiana. There were also conversations between Mohdkear and Mahde about Moyad Dannon erasing data from his cellular telephone before re-entering the United States from Jordan.  All of those conversations took place while Mahde Dannon was incarcerated in the Hamilton County, Indiana, jail on felony theft charges.  It is unlikely that the significance of those conversations, in the context of this case, escaped the notice of the Magistrate Judge.

material support to ISIS, a designated foreign terrorist organization, in violation of Title 18, United States Code, Section 2339B.

On July 16, 2016, Moyad Dannon, by counsel, moved this Court to review the detention order entered by the Magistrate Judge on June 7, 2019. (Dkt. 46)  In support of his motion, defendant Moyad Dannon argues:  the Defendant is a United States citizen, has lived in Indianapolis for approximately five (5) years and resides with his parents and five siblings; defendant's father is an attorney licensed in another country and proffered testimony at the detention hearing that defendant could reside with him at his residence at 10683 Summerwood Lane, Fishers, Indiana 46038, if he was granted pretrial release; defendant has a home phone available for use in conjunction with any electronic monitoring which might be ordered by the Court, including GPS home detention; defendant's risk category calculated by the Probation department is a Category 2, indicating a relatively low risk of flight and or danger to the community; statistical research in this District shows that risk Category 2, like Mr. Dannon, carries a 91% success rate for appearance when released; and defendant has little criminal history, has significant ties to this community, and with GPS monitoring is unlikely to flee the district or be a danger to the community.  *Id*.

For the reasons that follow, Moyad Dannon's motion should be denied and he should remain detained pending trial.

**II.    The Law**

A defendant is eligible for detention upon motion of the attorney for the Government in a number of circumstances, including case that involves an offense listed in 18 U.S.C. § 2332b(g)(5)(B) for which a maximum term of imprisonment of ten (10) years or more is prescribed.  18 U.S.C. § 3142(f)(1)(A)   A defendant is also eligible for detention upon motion

by the United States or the Court *sua sponte*, in cases involving (1) a serious risk that the person will flee or (2) a serious risk that the defendant will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, a prospective witness or juror. 18 U.S.C. § 3142(f)(2). *United States v. Sloan*, 820 F.Supp. 1133, 1135-36 (S.D. Ind. 1993). The existence of those conditions triggers the detention hearing, which is a prerequisite for an order of pretrial detention. 18 U.S.C. § 3142(e). The judicial officer determines the existence of these conditions by a preponderance of the evidence. *Friedman*, 837 F.2d at 49. *See United States v. DeBeir*, 16 F.Supp.2d 592, 595 (D. Md. 1998) (serious risk of flight); *United States v. Carter*, 996 F.Supp. 260, 265 (W.D. N.Y. 1998) (same).

In this case, the United States moved for detention pursuant to 18 U.S.C. §§ 3142(f)(1) and (f)(2). Once it is determined that a defendant qualifies under any of the ten conditions of § 3142(f), the Court may order a defendant detained before trial if the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community. 18 U.S.C. § 3142(e). Detention may be based on a showing of either dangerousness or risk of flight; proof of both is not required. *United States v. Fortna*, 769 F.2d 243, 249 (5th Cir. 1985).

With respect to reasonably assuring the appearance of the defendant, the United States bears the burden of proof by a preponderance of the evidence. *United States v. Portes*, 786 F.2d 758, 765 (7th Cir. 1985); *United States v. Himler*, 797 F.2d 156, 161 (3rd Cir. 1986); *United States v. Vortis*, 785 F.2d 327, 328-29 (D.C. Cir.), *cert. denied*, 479 U.S. 841, 107 S.Ct. 148, 93 L.Ed.2d 89 (1986); *Fortna*, 769 F.2d at 250; *United States v. Chimurenga*, 760 F.2d 400, 405-06 (2nd Cir. 1985); *United States v. Orta*, 760 F.2d 887, 891 & n. 20 (8th Cir. 1985); *United States v. Leibowitz*, 652 F.Supp. 591, 596 (N.D. Ind. 1987). With respect to reasonably assuring the safety of any

other person and the community, the United States bears the burden of proving its allegations by clear and convincing evidence.   18 U.S.C. § 3142(f); *United States v. Salerno*, 481 U.S. 739, 742, 107 S.Ct. 2095, 2099, 95 L.Ed.2d 697 (1987); *Portes*, 786 F.2d at 764; *Orta*, 760 F.2d at 891 & n. 18; *Leibowitz*, 652 F.Supp. at 596; *United States v. Knight*, 636 F.Supp. 1462, 1465 (S.D. Fla. 1986).   Clear and convincing evidence is something more than a preponderance of the evidence but less than proof beyond a reasonable doubt.   *Addington v. Texas*, 441 U.S. 418, 431-33, 99 S.Ct. 1804, 1812-13, 60 L.Ed.2d 323 (1979).

Under 18 U.S.C. § 3142(e)(3)(C), "subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community when the judicial officer finds that there is probable cause to believe that the person committed . . . an offense listed in section 2332b(g)(5)(B) of Title 18, United States Code, for which a maximum term of imprisonment of 10 years or more is prescribed."   Title 18, United States Code, Section 2332b describes acts of terrorism transcending national boundaries, and § 2332b(g)(5)(B) lists a violation of 18 U.S.C. § 2339B (providing material support to terrorist organizations) within its definition of a "federal crime of terrorism."

The legislative history of the Bail Reform Act of 1984 makes clear that Congress intended that the "safety of the community" language in Section 3142 be given a broad construction.   *See S*. Rep. No. 225, 98th Cong., 1st Sess. 12 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3195 ("The reference to safety of any other person is intended to cover the situation in which the safety of a particular identifiable individual, perhaps a victim or witness, is of concern, while the language referring to the safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community.   *The Committee intends that the concern about safety be given a broader construction than merely danger of harm involving physical*

5

*violence.")* (emphasis added). Courts have, therefore, appropriately construed the statute to find that protection of the community from economic harm is a valid objective of bail conditions. *See United States* v. *Schenberger,* 498 F. Supp. 2d 738, 742 (D.N.J. 2007) (holding that "[a] danger to the community does not only include physical harm or violent behavior" and citing the Senate Committee Report language reproduced above); *United States* v. *Persaud,* 2007 WL 1074906, at *1 (N.D.N.Y. Apr. 5, 2007) (concurring with the Magistrate Judge that "economic harm qualifies as a danger within the contemplation of the Bail Reform Act"); *United States* v. *Gentry,* 455 F. Supp. 2d 1018, 1032 (D. Ariz. 2006) (in a fraud and money laundering case, in determining whether pretrial detention was appropriate, the Court held that danger to the community under Section 3142(g) "may be assessed in terms other than the use of force or violence ... [including] economic danger to the community"); *see also United States* v. *Reynolds,* 956 F.2d 192, 193 (9th Cir. 1992) (post-conviction for mail fraud and witness tampering, the Court held that "danger may, at least in some cases, encompass pecuniary or economic harm."); *United States* v. *Provenzano,* 605 F.2d 85, 95 (3rd Cir. 1979) (in a pre-1984 Bail Reform Act case, post-conviction, the Court rejected an application for bail finding that "danger to the community" is not limited to harms involving violence).

The defendant's motion for review of detention the order identifies no new information relevant to the issue of Moyad Dannon's detention.

### III. ARGUMENT FOR DETENTION

#### a. Defendant is Charged with Serious Crimes Involving Firearms and Terrorism

The Criminal Complaint filed in this case is more than fifty (50) pages in length and provides amplifying, graphic detail to the crimes charged in the Indictment. Without belaboring the point, the Criminal Complaint sets forth a disturbing fact pattern in which defendant Moyad

6

Dannon, in concert with his brother Mahde, conspired to and did manufacture a number of untraceable, high-powered rifles, including fully-automatic rifles, which the defendants eagerly provided to undercover FBI agents and cooperating sources in exchange for money. Such a scenario is, of course, bad enough, but it does not tell the whole story.

As outlined at length in the Criminal Complaint, during the FBI investigation Moyad Dannon expressed both a desire and willingness to use his firearms expertise to aid fighters aligned with ISIS, a blood-thirsty foreign terrorist organization. More troubling, and of paramount concern to the Government, is the expressed desire and willingness of Moyad Dannon to travel overseas and *join* ISIS as a fighter or weapons expert. Indeed, throughout Moyad Dannon's interaction with undercover Government assets, he repeatedly expressed his ability and willingness to travel to join ISIS, as well as his access to foreign travel documents. As the Magistrate Judge noted from the PS-III prepared in this case, Moyad Dannon is a dual citizen of the United States and Jordan, he has strong family ties to Jordan, and he has traveled frequently to the Middle East in recent years.[3] Indeed, as outlined in the Criminal Complaint, Moyad Dannon traveled to Jordan twice in 2018, once in January and once in October.

Finally, Mahde and Moyad Dannon were arrested by the FBI on May 15, 2019, after they built and sold five fully-automatic rifles that they believed were being sent to ISIS. During the gun building operation, Moyad Dannon was observed illegally carrying one of his father's handguns on his person.[4] After the Dannon brothers finished building the automatic weapons, the weapons were sold to undercover FBI agents. Once the undercover FBI agents departed the

---

[3] The defendant reported possessing a valid U.S. and Jordanian passport, and reportedly traveled to visit family in the country of Jordan on approximately 5-6 occasions since 2008. The defendant also reported having family in the country of Jordan, with whom he visits and speaks with frequently. PS3, Dkt. 17 at 1-2.

[4] Mahde Dannon was also armed. Neither Moyad nor Mahde Dannon have an Indiana handgun permit which would allow them to carry firearms in that manner.

7

build location, agents outside the building announced their presence and ordered the Dannon brothers to surrender.   Instead of immediately surrendering, Moyad Dannon grabbed his handgun and racked the slide to ensure the weapon had a round of ammunition in the chamber.   Both brothers ultimately surrendered to the FBI shortly thereafter.   As the Government noted at the detention hearing, during a search incident to Moyad's arrest, the FBI located a computer flash drive attached to Moyad's key chain.   FBI forensic examiners subsequently reviewed the contents of that flash drive and discovered it contained violent and extremely graphic ISIS propaganda, to include lengthy videos depicting ISIS snipers shooting U.S. service members and ISIS fighters beheading captives.   FBI forensic examiners discovered identical ISIS propaganda videos on a laptop computer in Moyad's room at his father's residence.

    b.  **Statutory Penalties**

A violation of Title 18, United States Code, Section 2339B carries a statutory maximum sentence of twenty (20) years' incarceration.   A violation of Title 26, United States Code, Section 5861 carries a statutory maximum sentence of ten (10) years' incarceration.   Consecutive sentences on multiple counts of conviction are appropriate where the properly calculated U.S. Sentencing Guidelines range exceeds the statutory maximum.   *See*, U.S. Sentencing Guidelines §5G1.2(d).   For example, based on the facts of this case it is reasonable to assume that defendant will be convicted of multiple substantive violations of federal law, as well as conspiracy.   A conviction on the § 2339B count alone results in an Adjusted Offense Level of 40 and a criminal history category designation of VI.[5]   That translates into a guideline range of 360 months to life imprisonment.   Such a significant amount of prison time is, in and of itself, a reason to flee.

---

[5] Because 18 U.S.C. § 2339B is a federal crime of terrorism, the criminal history category is automatically VI.   *See*, U.S.S.G §3A1.4(b).

### c. Risk of Flight and Danger to the Community

Section 3142(f) permits the Government to seek the pre-trial detention of a defendant where defendant poses a danger to the community and/or in "a case that involves a serious risk that [the defendant] will flee" and/or "a serious risk that such person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness." Under 18 U.S.C. § 3142(e)(3)(C), there is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community when the judicial officer finds that there is probable cause to believe that the person committed a violation of 18 U.S.C. § 2339B. While the Magistrate Judge found the Government did not establish a predicate for such rebuttable presumption at the detention hearing, a finding the Government would dispute, a federal grand jury has since found probable cause to charge the defendants with violating that statute. Under the circumstances, the rebuttable presumption clearly applies.

IN LIGHT OF THE FOREGOING, and in consideration of all relevant factors, Moyad Dannon's motion for review of the detention order is without merit and should be denied. Moyad Dannon unquestionably poses the type of risk outlined in 18 U.S.C. § 3142(f), and he should continue to be detained, without bond, pending resolution of this cause. The government does not believe a hearing is necessary for the Court to resolve defendant's motion.

                Respectfully submitted,

                JOSH J. MINKLER
                United States Attorney

By:   S:/ Matthew J. Rinka
      Matthew J. Rinka
      Assistant United States Attorney
      Deputy Criminal Chief, National Security Unit

## CERTIFICATE OF SERVICE

    I hereby certify that on July 29, 2019, a copy of the foregoing Government's Response in Opposition to Defendant's Motion for Review of Detention Order was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

                                                     S:/Matthew J. Rinka
                                                     Matthew J. Rinka
                                                     Assistant United States Attorney